UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| EASTON ANTHONY WILSON, ) <br> ) <br> ) <br> v.                                                       ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> ) | Criminal No. 03-18-B-S <br> Civil No. 07-12-P-S |

**ORDER ON MOTION FOR EVIDENTIARY HEARING AND**
**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Easton Wilson, who pled guilty to five federal drug charges, has filed a 28 U.S.C. § 2255 motion seeking relief from his 320-month sentence on the grounds that his attorney was ineffective. In his reply memorandum Wilson has also requested an evidentiary hearing (Docket No. 12). I deny Wilson's request for an evidentiary hearing and recommend that the court deny Wilson 28 U.S.C. § 2255 relief.

*DISCUSSION*

*Standards Applicable to the Review of Wilson's Habeas Grounds*

Wilson is entitled to 28 U.S.C. § 2255 relief only if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" 28 U.S.C. § 2255 ¶1. With respect to this Court's review of Wilson's § 2255 claims, the motion "is subject to dismissal, without an evidentiary hearing, if the grounds for relief either are not cognizable under section 2255 or amount to mere 'bald' assertions without sufficiently

particular and supportive allegations of fact." Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992) (citing Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)).

The rule of thumb is that Sixth Amendment ineffective assistance claims are properly saved for airing in a 28 U.S.C. § 2255 proceeding. With respect to such challenges the First Circuit has explained:

> The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." It is well settled that this right to effective assistance of counsel attaches at all critical stages of the trial, United States v. Wade, 388 U.S. 218 (1967), including at sentencing. Gardner v. Florida, 430 U.S. 349, 358 (1977) (holding that "sentencing is a critical stage of the criminal proceeding at which [defendant] is entitled to the effective assistance of counsel").
> The touchstone for any ineffective assistance of counsel claim is the two-part test laid down by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).
>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> Id. at 687. In other words, defendant "must show that counsel's performance was so deficient that it prejudiced his defense." United States v. Ademaj, 170 F.3d 58, 64 (1st Cir.1999) (summarizing Strickland). As the Strickland Court explained, "[u]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687.

United States v. Colon-Torres, 382 F.3d 76, 85-86 (1st Cir. 2004). The Strickland test applies to ineffective-assistance claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

Additionally, this Court can draw on its own first-hand knowledge of counsels' performance at the trial and sentencing in weighing the merits of his claims. See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

### *Procedural Background and the Disposition of Wilson's Second Appeal*

After this Court sentenced Wilson, he filed a direct appeal in which he argued, among other points, that this Court ran afoul of United States v. Booker, 543 U.S. 220 (2005) when it sentenced him under the mandatory guidelines. The First Circuit remanded the case to this court for re-sentencing through the Booker prism, a case that issued after this Court's sentence was imposed. See United States v. Wilson, No. 04-1786, 2005 WL 1399302 (1st Cir. June 15, 2005). On remand this Court re-sentenced Wilson to the same 320 months of imprisonment. (Crim. No. 03-18-B-S, Docket No. 534.) Once again Wilson appealed his sentence and the First Circuit affirmed. See United States v. Wilson, No. 05-2452, 2006 WL1703805 (1st Cir. June 22, 2006).

## Wilson's 28 U.S.C. § 2255 Ineffective Assistance of Counsel Claims[1]

### *Counsel's Failure to Move to Suppress Evidence*

One of Wilson's complaints with his attorney concerns efforts to suppress evidence. (Traverse Resp. at 14.) Wilson, recognizing that his attorney did file two motions to suppress, runs through a series of questions in setting out this habeas claim:

> 1. What was the result of these two (2) motion[s] to suppress, the evidence which was obtained in violation of Mr. Wilson's constitutional rights?

---

[1] Wilson lists four discreet, if disjointed, grounds on his form 28 U.S.C. § 2255 motion. His accompanying affidavit refers to other discontents and his "traverse response" to the United States' motion for summary dismissal (to which the United States has had no opportunity to respond) breaks his complaints down into seven "issues," the seventh being a request for an evidentiary hearing. I have pieced together his grounds under the following headers. The United States generously dissected multiple grounds from Wilson's form 28 U.S.C. § 2255 motion and his affidavit. The United States has offered a discussion under the header of "Competence," but I do not read Wilson's pleadings as raising this as a ground for relief.

3

>     2.    Did this district court rule upon these motions to suppress evidence?
>     3.    Did [Wilson's attorney] withdraw these motions to suppress the illegal evidence which was obtained[?]

(Id.) Wilson complains that his attorney abandoned or modified his suppression grounds without consulting him. (Id. at 15 -16.) He also believes that the United States did not respond to the motions to suppress and that this failure was a violation of Wilson's due process rights. (Id. at 14.)

On May 13, 2003, defense counsel filed a motion to suppress, arguing there was insufficient probable cause in the warrant affidavit to support the search, and that the evidence seized and the statements Wilson made should be suppressed. (Crim. No. 03-18, Docket No. 12.) On April 3, 2003, the United States filed a response. (Id., Docket No. 16.) On May 1, 2003, the United States filed a superseding indictment. (Id., Docket Nos. 17 & 18.) On May 28, 2003, counsel for Wilson filed a second motion to suppress which reiterated the insufficient probable cause argument and added a claim that there was a Fifth Amendment infirmity apropos Wilson's Miranda waiver. (Id., Docket No. 42.) The United States filed a response to this motion supported by ten attachments pertaining to the authenticity of Wilson's signature on the waiver form. (Id., Docket No. 58.) A second superseding indictment was filed on August 19, 2003. (Id., Docket No. 66; see also id., Docket No. 64.) Wilson's attorney then filed a motion which requested a hearing on the motion to suppress and a continuation of the arraignment date. (Id., Docket No. 110.) Magistrate Judge Cohen conducted an evidentiary hearing on the motion to suppress on October 1, 2003 (id., Docket No. 156) and issued a report and recommended decision on October 8, 2003, denying the motion to suppress (id., Docket No. 167).

In his 28 U.S.C. § 2255 pleadings Wilson seems to be lamenting that his suppression arguments surrounding the probable cause in the affidavit were never pressed to a decision. Counsel did notify Magistrate Judge Cohen at the beginning of the suppression hearing that he was no longer pressing the argument that there was not sufficient probable cause in the warrant affidavit. On this score, the United States reflects: "Although defense counsel abandoned the complaint with the warrant, he pursued his attempts to have Wilson's statements suppressed. Such conduct is certainly within the bounds of reasonableness." (Gov't Mot. Dismiss at 14.)

Whether or not the affidavit submitted to the Court in support of the search warrant had sufficient probable cause is a legal, as opposed to factual, question. The argument made, and then relinquished, by counsel was that only one of the agents described in the affidavit had personally transacted drug deals on the premises to be searched and all the other reports were second or third hand. (First Mot. Suppress at 5; Second Mot. Suppress at 5.)  In responding to Wilson's first motion to dismiss the United States filed the warrant affidavit and I have reviewed it. (Crim. No. 03-18-B-S, Docket No. 16-3.)  I conclude that the challenge to the affidavit was of little merit and, therefore, counsel did not perform deficiently in withdrawing it and focusing on the Miranda challenges instead.

### *Counsel's Failure to Challenge Sentencing Enhancements*[2]

---

[2] The only reference to drug quantity issues in Wilson's 28 U.S.C. § 2255 pleadings seems to be in his affidavit in which he faults the court for erring when it held him responsible for more than 302.5 grams of cocaine. (Wilson Aff. ¶ 4.)
The First Circuit Court of Appeals rejected Wilson's appellate drug quantity arguments, reasoning:
> I. *Apprendi Claims*
> In Booker, the Court reaffirmed its holding in Apprendi:
>> Any fact (other than a prior conviction) which is necessary to support a sentence **exceeding the maximum authorized by the facts established by a**

**Role-in-the-Offence Enhancement**

Wilson faults counsel for not challenging the four-point leadership role enhancement. (Traverse Resp. at 3-6.) He indicates that he was only one of several sources of drug supply, was less culpable than other participants, and played only a minor role in the criminal activity. (Id. at 4.) He complains that he was denied due process at sentencing when this Court made the role-in-the-offense finding without factual proof. (Id. at 6.) In his affidavit Wilson opines that he "was not the leader of this drug operation." (Wilson Aff. ¶ 1.) He states that none of his co-conspirators gave any "pre-

---

**plea of guilty** or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

United States v. Booker, 543 U.S. 220, 244 (2005)(emphasis added). Wilson's contention that the sentences imposed for Counts I and III exceeded the default statutory maximum imprisonment terms for those offenses is unfounded. Count I charged conspiracy to distribute "50 or more grams of cocaine base" and Count III charged conspiracy to import "5 or more kilograms of cocaine." Wilson entered an unconditional plea to those charges and during the plea colloquy admitted to the "Prosecution Version" of the facts, which included the quantities charged in the indictment. The maximum statutory imprisonment corresponding to those drug quantities is life. See 21 U.S.C. § 841(b)(1)(A)(iii) (Count I); id. § 960(b)(1)(B)(ii) (Count III). Therefore, the sentences imposed did not "exceed [ ] the maximum authorized by the facts established by [Wilson's] plea of guilty," Booker, 543 U.S. at 244, 125 S.Ct. 738, and there was no Apprendi error.

    Wilson claims his sentence is unreasonable because it is based on clearly erroneous facts.

    ….

    A. *Drug Quantity*

    Wilson's main attack on the court's drug quantity finding is that it includes "estimates." The record supports the statement in the presentence investigation report (PSR) that it contains "conservative estimate[s]" of the amount of drugs attributable to Wilson in this case. As Wilson himself points out, where the reported information provided no reliable method to determine the drug quantities involved, no quantity was attributed. And where a reported amount seemed higher than would be consistent with other information obtained by the Probation Office, it was reduced accordingly. These approaches support, rather than undercut, the PSR's drug quantity calculation that was adopted by the sentencing court.

    "[S]uch a determination need not be exact, but, rather, may be approximate, as long as the approximation represents a reasoned estimate." United States v. Santos, 357 F.3d 136, 141 (1st Cir.2004). The sentencing court's factual finding as to drug quantity was not clearly erroneous.

Wilson, 2006 WL 1703805 at *1-2. Wilson has not sufficiently pled an ineffective assistance claim vis-à-vis drug quantities.

arrest statements," nor did they testify that he was the leader.  (Id.)  He swears that "Rodrick Allen was the leader and the government was fully aware of this fact[]."  (Id.)

As the United States points out, counsel did challenge the leadership enhancement at sentencing.  (Plea, Pre-sentence & Sentencing Tr. at 18, 22.)  This Court found,

> on the factual background contained in the presentence investigation report that the role as described to the defendant is accurate.  I do that taking into account the extensive role that he played in the importation of drugs as set forth in the presentence report and that he took with the various drug distribution networks established and operating in the State of Maine.

(Id. at 23.)

As part of his second appeal, counsel again raised the leadership enhancement challenge and the First Circuit concluded:

> The district court applied a four-level enhancement to Wilson's offense level based on a finding that Wilson was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Wilson does not contest that there were five or more participants involved in the conspiracy. His only argument is that "[t]he other participants had their own agendas for their roles in the schemes. It is unfair to the Defendant and unreasonable to suggest, but for [Wilson's] involvement these individuals would not have formed a network."
> The district court's finding that Wilson qualified as a leader or organizer is adequately supported. The "Prosecution Version" of the facts, which was expressly accepted as true by Wilson at his guilty plea hearing, described Wilson's specific recruitment of accomplices, exercise of control over others, and use of decisionmaking authority. Wilson has failed to demonstrate that the four-level enhancement was based on a clearly erroneous factual assessment of his role in the offense. See United States v. Diaz-Diaz, 433 F.3d 128, 138-39 (1st Cir.2005) (affirming four-level enhancement under clear error review where the evidence showed, among other things, that defendant actively recruited other participants and instructed others as to the best route for transporting drugs).

United States v. Wilson, No. 05-2452, 2006 WL 1703805,*2 (1st Cir. June 22, 2006).

So, counsel did indeed press a challenge to the role in the offense enhancement persistently through to the second direct appeal. With respect to counsel's performance Wilson does highlight that the United States argued in its appellate brief that the claim could be rejected because it was insufficiently developed in Wilson's brief. (Traverse Resp. at 8.) However, the First Circuit addressed the claim head-on. And, although Wilson suggests that he would have had counsel call witnesses on this concern, in this 28 U.S.C. § 2255 motion Wilson does not identify the witnesses that would have advanced his challenge or allege the existence of probative information on this score known to his attorney that he failed to raise. Wilson has failed to establish that counsel performed below the Strickland standard vis-à-vis the role-in-the offense enhancement.

**Gun Enhancement**

Wilson asserts that a "remand is necessary to allow this court to make explicit findings about whether Mr. Wilson possess[ed], used or carried a .22 caliber handgun, justifying two (2) level increase in Mr. Wilson's sentence." (Traverse Resp. at 7.) He maintains that there was no evidence presented during the prosecution of his case that he possessed the handgun. (Id.) He further believes that if a weapon was found during the search and used as a basis of his sentence it should have been charged in the second superseding indictment. (Id.; Wilson Aff. ¶ 2.) Wilson now claims that his attorney was "so unprofessional in performance of his duty in district court" the United States argued on direct appeal that the issue was not preserved by Wilson. (Traverse Resp. at 8.) With respect to his complaints about his attorney's work on direct appeal, Wilson believes that counsel should have argued that the second superseding indictment did not charge Wilson

8

with possession of a firearm and that this ran afoul of Apprendi and Blakely. (Traverse Resp. at 18-20 & n. 5; Sec. 2255 Mot. at 6; Wilson Aff. ¶ 3.)

Vis-à-vis the gun, this Court explained at sentencing: "In this case a firearm was found in the defendant's bedroom during the search conducted on April 12, 2003 in close proximity to a significant quantity of cocaine base and cash." (Plea, Pre-sentence & Sentencing Tr. at 30.) The First Circuit addressed the appellate challenge to this enhancement as follows:

> In calculating the guideline sentencing range, the district court applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), for possession of a dangerous weapon. The court adopted the PSR's finding that "a firearm was found in the defendant's bedroom during the search conducted on April 12, 2003, in close proximity to a significant quantity of both cocaine base and cash." Wilson does not contest the accuracy of that finding. Instead, he argues that the government failed to point to any evidence of the use of a firearm to advance any aspects of the drug trafficking. However, "[u]nder our case law there is no requirement that the weapon have been intended for use in perpetrating the drug offense, much less that it have been used in furtherance of the offense." United States v. Castillo, 979 F.2d 8, 10 (1st Cir.1992).

Wilson, 2006 WL 1703805 at *3.

The First Circuit addressed Wilson's Blakely claim, which included the possession of a dangerous weapon facet, as follows:

> Wilson argues that his Sixth Amendment rights were violated when the district court enhanced his guideline sentence based on the following factual findings that were neither charged in the indictment nor proved to a jury beyond a reasonable doubt: 1) defendant's role in the offense as an "organizer or leader," 2) the drug quantity used to arrive at a base offense level, 3) his possession of a dangerous weapon, and 4) attribution to defendant of prior criminal conduct committed under an alias.
> Wilson claims that such judicial fact-finding violated Blakely. "Blakely claims are now viewed through the lens of [Booker]." Cirilo-Muñoz v. United States, 404 F.3d 527, 532 (1st Cir.2005). "Under Booker, a judge may do such fact finding in determining the Guidelines range. Nothing in Booker requires submission of such facts to a jury so long as

9

> the Guidelines are not mandatory." Antonakopoulos, 399 F.3d at 80; see United States v. Yeje-Cabrera, 430 F.3d 1, 17 (1st Cir.2005). Therefore, there was no Blakely error in this case.

Wilson, 2006 WL 1703805 at *2.

As with the role-in-the-offense enhancement, the First Circuit addressed the claim as properly presented. There was no Strickland prejudice. With respect to counsel's performance, Wilson's suggestion that there was a factual basis for challenging the enhancement is conclusory, contradicted by the record, and self-serving  See Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007); McGill, 11 F.3d 225-26.

### *Advice to Plead Guilty and Failure to Negotiate a Favorable Plea Agreement*

With regards to Wilson's assertions that his attorney failed to advise him of the law and facts applicable to his decision to plead guilty or go to trial, Wilson focuses in on the fact that he could not read at the time that the change of plea hearing was held (Traverse Resp. at 9,12) and this Court, the prosecutor, and his defense attorney were fully aware of this disadvantage (Wilson Aff. ¶ 10). Wilson points to counsel's representations to the court at the change of plea hearing in which counsel assured the court that he reviewed the prosecution's version with Wilson. (Plea, Pre-sentence & Sentencing Tr. at 11.) Wilson opines that his counsel was only interested in getting more money from Wilson and was not interested in performing his duties as a lawyer. (Traverse Resp. at 11.) Wilson claims that his attorney, who was urging him to plead guilty, informed him that if he pled guilty he would receive not more than 12 to 15 years in prison (id. at 9-10; Wilson Aff. ¶ 8); Wilson believes that "there is a reasonable probability that, but for counsel's errors," he would have received 12 to 15 years in prison. (Traverse Resp. at 13). Wilson also makes references to counsel's failure to

secure a plea agreement with the Government. (Wilson Aff. ¶¶ 6, 10; Traverse Resp. 18.)

This Court knows first-hand that it fully explored Wilson's understanding of the decision to enter a change of plea at the Rule 11 hearing. Wilson indicated that he went through 11th grade in Jamaica. (Plea, Pre-sentence & Sentencing Tr. at 3.) The Court concluded that Wilson was competent to enter a plea. (Id. at 3-4.) Wilson represented that he had read the second superseding indictment, discussed it with his attorney, and that his attorney had explained the possible penalties. (Id. at 6.) Counsel told the court that Wilson had "read it himself personally," had asked his attorney questions, which he answered to the best of his ability, and that counsel was "certain" that Wilson new what he was pleading to. (Id. at 6-7.) This Court told Wilson that by pleading guilty to two of the counts he faced a period of imprisonment of not less than ten years and not more than life; that on one count he could get not less than five years and not more than forty; and on the two other counts he could be sentenced to twenty years. (Id. at 7-8.) The Court stressed that it would determine Wilson's sentence and could imposed a sentence that was either more severe or less severe than the sentence called for by the applicable guideline. (Id. at 13-14.) Wilson assured the Court that no one had made promises to him as to what sentence he would receive. (Id.14-15.) The Court also explained the rights that Wilson was sacrificing by entering the plea. (Id. at 8-10.) Defense counsel assured the court that he had reviewed the prosecution version with Wilson and had answered all his client's questions. (Id. at 11.) Wilson assured the court that he had read this document, understood it, and that its representations were true. (Id. at 12.)

11

> "[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so. Stated otherwise, we hold that a defendant should not be heard to controvert his Rule 11 statements in a subsequent § 2255 motion unless he offers a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]."

United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) (quoting Crawford v. United States, 519 F.2d 347. 350 (4th Cir. 1975)). In my view Wilson's assertion that he could not read at the time of the plea does not adequately controvert his assurances to the Court at the time he changed his plea that he had fully discussed the implications of his plea with his attorney. Likewise, other than his own references to his attorney's statements about a 12 to 15 year sentence exposure, Wilson has not advanced any evidence to controvert the record evidence that no promises were made and that Wilson knew he faced a sentence well of up to life. See Otero-Rivera v. United States, 494 F.2d 900, 902 (1st Cir. 1974); see also Butt, 731 F.2d at 80 n.5. ("Evidentiary hearings have been granted to § 2255 appellants who have claimed that their plea was induced by attorney misrepresentations only when the allegations were highly specific and usually accompanied by some independent corroboration.").

With respect to the failure to obtain a plea agreement the United States argues that "nothing in the record suggests that the Government was remotely interested in a plea agreement. Quite the contrary, the AUSA's statements at sentencing suggest that the Government viewed Wilson as the ringleader of a massive drug conspiracy who was unworthy of leniency in any form." (Gov't Mot. Dismiss at 16.) It also notes that counsel could have made a tactical judgment in not entering into such an agreement as Wilson would have had to give up something in consideration, such as entering into a

sentencing stipulation or waiving his right to appeal. (Id. at 17.) Finally, the United States notes that there was no prejudice to Wilson given that he received concurrent terms on the five counts meaning that if one or two of the lesser counts were dismissed per a plea agreement he would still have been facing 320 months. (Id. at 17-18.) I agree with the United States that there is no evidence that Wilson's counsel could have negotiated a plea agreement that could have benefited his client in any appreciable way.

### *Failure to be Present at Wilson's PSI "Hearings"*

Wilson faults his attorney for failing to be present at both of his PSI "hearings" (Sec. 2255 Mot. at 5; Traverse Resp. at 18; Wilson Aff. ¶ 5.) He asserts in his traverse response to the United States that he asked his attorney "to be present at the PSI hearing, because he could not read or write and was just started taking courses in jail to know how to read and write. Counsel did not g[i]ve any reasons for his absen[ce] from PSI hearing." (Traverse Resp. at 13 n.3.) The United States guesses that Wilson is referring to his meetings with the pre-sentence report preparer, as counsel did participate in the pre-sentencing court proceedings.

Several circuits have concluded that there is no guarantee in the Sixth Amendment to have counsel present during the presentence investigation interview. See, e.g., United States v. Washington, 11 F.3d 1510, 1517 (10th Cir. 1993) ("Defendant's Sixth Amendment argument also fails. We recently held that "the presentence interview is not a critical stage of the proceeding within the meaning of the Sixth Amendment." United States v. Gordon, 4 F.3d 1567 (10th Cir.1993). Therefore, defendant had no Sixth Amendment right to the presence or advice of counsel during his presentence interview. Id."); United States v. Tisdale, 952 F.2d 934, 940 (6th Cir. 1992) ("Although the

13

Sentencing Guidelines have increased the importance of the probation officer's report, in non-capital cases such as this one the presentence interview does not represent a 'critical stage of the prosecution.'"); accord United States v. Woods, 907 F.2d 1540, 1543 (5th Cir. 1990) In United States v. Ocasio-Rivera, the First Circuit left open the question of whether there is "a constitutional right to counsel at a routine presentence interview in a non-capital case," noting the circuit split, 991 F.2d 1, 3 n.3 (1st Cir. 1993), and as best as I can tell it has not revisited this question since. I do not have any reason to believe that counsel's failure to attend this pre-sentence interview violated Wilson's constitutional right to effective assistance of counsel during the plea and sentencing phase of this case.

### *Performance of Counsel on Direct Appeal Relating to Prior Conviction*

Wilson argues that appellate counsel should have obtained "exculpatory documents" apropos one of the prior convictions used to enhance his sentence and Wilson believes that the use of this conviction by this Court was plain error. (Traverse Resp. at 18.)[3] In his affidavit he explains:

> Affiant affirms and knowing it to be true that on January 9, 1992, the Broward (FL) County Sheriff's Office Dkt. # 92-608CF10A arrested Mr. Wilson under his driver['s] license name Anthony Brown for aggravated Battery. On January 15, 1992 six (6) days later no charge[] was filed against Mr. Wilson. See PSI Report at paragraph 40, this charge[] was dismissed, so to use[] it to increase Mr. Wilson['s] sentence by adding one (1) point and move his criminal category up to category II was clearly in violation of due process of law of the 5th and 6th amendment of the U.S. Constitution.

(Wilson Aff. ¶ 9.)

---

[3] In addition to the gun enhancement and the prior conviction, Wilson highlights a third area under this appellate performance ground -- he thinks counsel should have argued that Wilson, by not working out a beneficial plea agreement, did not receive a benefit by pleading guilty. Wilson is really faulting his attorney's performance in failing to negotiate a plea deal. (Id.) He also faults his attorney for failing to be present at "both Mr. Wilson['s] pre-sentence[] PSI hearing[s]." (Id.) I have already addressed these concerns.

14

> With respect to the prior conviction, the First Circuit stated:
>
>> Wilson…objects, as he did at sentencing, to the district court's use of his conviction for a 1992 offense committed under the alias of Anthony Brown, for which he received one criminal history point. In response to Wilson's objection to the PSR in this regard, the Probation Office noted that the PSR reported with respect to another 1992 Florida conviction that Wilson had "acknowledged that he was using the license of Anthony Brown at this time." At the original sentencing, the district court recognized this as an area of dispute and made the following finding: "I find based on the contents of the presentence investigation report that the criminal conduct described to his a/k/a is properly his and in fact it occurred." The district court reiterated those findings at the re-sentencing hearing. Wilson has failed to demonstrate that such findings were clearly erroneous.

Wilson, 2006 WL 1703805 at *3.

Wilson's non-specific and unsubstantiated reference to exculpatory documents is not sufficient to establish that counsel performed inadequately apropos the criminal conduct under the Brown alias.

### *Wilson's Cumulative Ineffective Assistance Claim*

Finally, Wilson argues that if all of his claims of counsel's ineffectiveness are tallied together he makes out a claim for a Sixth Amendment violation. (Sec. 2255 Mot. at 5; Wilson Aff. ¶ 5; Traverse Resp. at 21-22.) "Strickland clearly allows the court to consider the cumulative effect of counsel's errors in determining whether a defendant was prejudiced.'" Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005) (quoting Kubat v. Thieret, 867 F.2d 351, 370 (7th Cir.1989)). However, this is not a case that generates such a claim. It should be clear from my discussion above that not only do I disagree with Wilson that counsel's asserted shortcomings individually arise to the level of inadequate performance, I can find nothing of any weight in Wilson's discontents with counsel's performance to even begin to aggregate on a theory of cumulative infirmity.

15

See cf. United States v. Sampson, __ F.3d __, __ 2007 WL 1393742, * 35 (1st Cir. May 7, 2007) ("None of its individual rulings worked any cognizable harm to Sampson's rights. It necessarily follows that the cumulative error doctrine finds no foothold in this appeal."). [4]

**Request for an Evidentiary Hearing**

Based upon my discussion of the facial lack of merit as to any of Wilson's ineffective assistance claims, I conclude that this motion does not warrant an evidentiary hearing. "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003). "[A] hearing is not necessary 'when a s 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" United States v. DiCarlo, 575 F.2d 952, 954 -55 (1st Cir. 1978) (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). "Moreover, if the claim is based upon facts with which the trial court, through review of the record or observation at trial, is familiar, the court may make findings without an additional hearing." Id. accord McGill, 11 F.3d at 225.

---

[4] I recognize that Wilson also argues that the decisions of the First Circuit Court of Appeals on his two direct appeals "are in conflict." (Wilson Aff. ¶ 12; Traverse Resp. at 21 n.6.) He notes that in its first opinion the First Circuit stated in a footnote that the sentence imposed after remand for sentencing under Booker would be subject to review for reasonableness. (Wilson Aff. ¶ 11; Traverse Resp. at 21 n.6.) This Court's 28 U.S.C. § 2255 review does not encompass challenges to the validity of the First Circuit's direct appeal determinations.

16

*Conclusion*

For the reasons set forth above, I **DENY** Wilson's motion for an evidentiary hearing (Docket No. 12) and I recommend that the Court **DENY** Wilson 28 U.S.C. § 2255 relief.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

June 18, 2007.　　　　　　　　　　　　　/s/Margaret J. Kravchuk
　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge